UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| NICHOLAS A. FETTY, ET UX. | CIVIL ACTION NO. |
| VERSUS | 18-945-SDD-RLB |
| THE CITY OF BATON ROUGE, CHIEF MURPHY J. PAUL, JR., CHIEF OF POLICE, BATON ROUGE CITY POLICE; SECRETARY JAMES M. LEBLANC, LA DEPT. OF PUBLIC SAFETY AND CORRECTIONS; COL. KEVIN W. REEVES, SUPERINTENDENT, LA STATE POLICE; OFFICER BRIAN STRONG, BRPD; SEVEN (7) YET TO BE IDENTIFIED LA STATE TROOPERS | |

**RULING**

This matter is before the Court on the *Motions in Limine to Exclude the Testimony and Report of Lloyd Grafton*[1] by Defendants, Secretary James LeBlanc, Department of Corrections, and Colonel Kevin Reeves, Superintendent of Louisiana State Police and by the City of Baton Rouge/Parish of East Baton Rouge ("City/Parish"), Chief of Police, Murphy J. Paul, Jr. ("Chief Paul"), Officer Brian Strong ("Strong"), Officer Joel Pattison ("Pattison"), and Officer Brian Watson ("Watson")(or collectively, "the City/Parish Defendants"). Plaintiffs Nicholas A. Fetty ("Fetty" or "Plaintiff") and Emily Fetty ("Emily" or "Plaintiffs") have filed an *Opposition*[2] to these motions, to which Defendants filed a *Replies.*[3] For the following reasons, the Court finds that Defendants' motions should be

---
[1] Rec. Doc. Nos. 50 & 52, respectively.
[2] Rec. Doc. No. 54.
[3] Rec. Doc. Nos. 61 & 63.

granted to the extent set forth below.

I. **FACTUAL BACKGROUND**

On November 1, 2017, Plaintiffs attended a concert at the Texas Club in Baton Rouge, Louisiana.[4] That night, Fetty was arrested in the parking lot of the club by several officers with the Louisiana State Police Fugitive Task Force.[5] Fetty acknowledges that the arrest was made pursuant to an arrest warrant for his alleged conduct that occurred about two weeks prior to his arrest, on or about October 13, 2017, in a subdivision south of the campus of Louisiana State University.[6] The arrest warrant was for the alleged false imprisonment while armed with a dangerous weapon and simple assault committed by Fetty.[7] Fetty claims that the officers used unreasonable and excessive force in making this arrest, and as result, he suffered significant injuries.[8] Fetty filed this lawsuit asserting that Defendants violated his federal constitutional rights pursuant to 42 U.S.C. § 1983 and violated his rights under the Louisiana Constitution and tort law.

II. **ARGUMENTS**

The above-named Defendants have moved[9] to exclude certain testimony and conclusions in the purported expert report of Plaintiffs' "police policy and procedure" expert, W. Lloyd Grafton ("Grafton").[10] Grafton reaches four primary conclusions as expressed in his report:

> Opinion #1: It is my opinion to a reasonable degree of professional certainty that the use of force by the arresting officers (Baton Rouge City Police

---

[4] Rec. Doc. No. 1, ¶ 6.
[5] *Id.* at ¶¶ 11-12.
[6] Rec. Doc. No. 16 at 2.
[7] *Id.* at 5.
[8] Rec. Doc. No. 1, ¶¶ 13-16.
[9] Because the moving Defendants make essentially the same arguments and request the same relief in their respective motions, the Court will consider them jointly made for purposes of this ruling.
[10] *See* Rec. Doc. No. 50-3.

> Officers and Louisiana State Police) was clearly not necessary and objectively unreasonable, resulting in harm and injury to Nicholas Fetty.
>
> Opinion #2: It is my opinion to a reasonable degree of professional certainty that the three arresting officers failed to follow their PPCT Training when taking Mr. Fetty into custody.
>
> Opinion #3: It is my opinion to a reasonable degree of professional certainty that the arresting officers were unprofessional in their handling of the incident involving Mr. Fetty on November 2, 2017.
>
> Opinion #4: It is my opinion to a reasonable degree of professional certainty that the 'choke hold' on Mr. Nicholas Fetty was force that was unnecessary and unreasonable resulting in harm to Mr. Fetty.[11]

Defendants argue these opinions/conclusions should be excluded in their entirety or limited in scope because they: "(1) will not assist the trier of fact in understanding the evidence or determining a fact at issue[]; (2) offer legal conclusions; and (3) reference evidence upon which experts in the field of police policies and procedures would not rely to formulate their opinions and instead use that evidence to make credibility determinations about witnesses and parties in this case."[12]

Defendants also move to exclude other statements in Grafton's report which are based on Grafton's credibility determinations and assumptions that rely entire on Plaintiffs' version of events. Defendants point to Grafton's question, when "was Trooper Huval telling the truth and when was he lying?"[13] Then, according to Defendants, Grafton improperly concludes that the troopers lack credibility and cannot be trusted.[14] Defendants argue this demonstrates that Grafton improperly assumes Plaintiffs' version

---

[11] *Id.* at pp. 2-3.
[12] Rec. Doc. No. 50-1, pp. 2-3. The City/Parish makes essentially the same arguments regarding Grafton's conclusions, arguing they "(1) rely on inaccurate and incomplete facts, (2) exceed the scope of permissible opinions regarding issues for the trier of fact and credibility determinations; (3) draw legal conclusions in violation of FRE 704; and (4) are unhelpful and prejudicial." Rec. Doc. No. 52-1, p. 2.
[13] Rec. Doc. No. 50-3, p. 9.
[14] *Id.* at p. 9.

of events are true and discounts the troopers' description of the arrest. This subjective review of the materials in this matter will not aid the trier of fact in understanding the trial evidence.

Further, Grafton admits he was not given any information to suggest Fetty had been drinking on the night of the arrest;[15] yet, Fetty testified that he split a bottle of champagne with his wife and consumed two to three beers before the arrest.[16] Thus, Defendants contend Grafton's opinions are based upon incomplete or erroneous data.

Grafton also admits that his opinions are based on the assumption that Fetty did not resist arrest during the incident; thus, he concludes the alleged striking of Fetty's nose was excessive force.[17] However, the officers who arrested Fetty dispute that he was struck in the face and will testify that Fetty did resist arrest. Thus, Defendants argue that, rather than assist the jury, Grafton's conclusions and statements improperly weigh credibility and essentially instruct to the jury how to find as to these disputed issues of fact.

Defendants also challenge Grafton's conclusion that, based on a letter of reprimand issued to Trooper Huval back in 2014, it is "an accepted rule … that a person's past behavior will give you a good idea how they will act or perform in the future."[18] Considering this letter of reprimand is for a single event that occurred more than three years prior to the incident at issue, drawing conclusions in this matter based on this piece of likely inadmissible evidence flies in the face of Fed. R. Evid. 703 and 704. Grafton then

---

[15] *See* Rec. Doc. No. 50-2, Excerpts from Deposition of Lloyd Grafton, p. 27, ln. 22-24.
[16] *Id.* at pp. 27, ln. 25 through 28, ln. 9.
[17] *Id.* at p. 24, ln. 24 through p. 25, ln. 8.
[18] Rec. Doc. No. 50-3, p. 8.

uses this basis to provide conclusions based on his credibility determinations from the reliance on this type of evidence:

> Grafton then claims that the acts described in the letter offer a "glimpse" into Trooper Huval's character such that the trier of fact should ask, "At what point and at what time was Trooper Huval telling the truth and when was he lying?"[19] Again, Grafton's testimony about the witness's credibility is improper. Further, Grafton references a prior, alleged act from 2014 to attack Trooper Huval's character and argue that Trooper Huval acted in accordance with a description of the trooper's character that Grafton creates. This testimony must be excluded.[20]

Further, Grafton relies on a video interview of Max Fetty, Fetty's father, wherein Max Fetty discusses events that happened prior to Fetty's arrest and attacks the character of the troopers involved. From this, Grafton draws broad, general conclusions, stating that Max Fetty's description of the officers' conduct "is a perfect example of why many citizens lose respect for law enforcement."[21] This, too, is an inappropriate basis for the conclusions reached in this case and provides a biased view that will not assist the jurors at trial and causes undue prejudice.

Plaintiffs respond only generally to Defendants' motions. Plaintiffs fail to directly and specifically address the items complained of; rather, they focus on Grafton's experience as their sole defense to Defendants' challenge. Plaintiffs likewise offer general jurisprudence on expert testimony but fail to offer countervailing law or jurisprudence for that offered by Defendants for each issue challenged.

Plaintiffs recount their version of the events, without citation to record evidence, and provide the Court with Grafton's professional credentials and experience in the area of police policy and procedures. Plaintiffs acknowledge that it is for the jury to determine

---

[19] Rec. Doc. No. 50-1, p. 15 (quoting Rec. Doc. No. 50-3, p. 9).
[20] *Id.*
[21] Rec. Doc. No. 50-3, p. 10.

fact issues in this matter but contend that "Grafton's report/testimony sheds much needed expertise and enlightenment" on the resolution of these disputed facts.[22] Plaintiffs maintain that Grafton's expertise, which is unchallenged by the Defendants, is necessary to aid the jury in understanding the evidence and determining the facts: "not only will Grafton's testimony help the trier of fact to understand the evidence and to determine the facts, contrary to the Defendants' argument, but his testimony is also crucial in providing the trier of fact with objective observations, opinions and a necessary counter-point from someone other than one of the Defendants."[23]

For the reasons set forth below, the Court agrees with Defendants' arguments and will exclude the aforementioned statements and opinions.

### III.  LAW & ANALYSIS

#### A.  *Daubert/Kumho*[24] Evaluation of Admissibility of Expert Witnesses

Pursuant to Fed. R. Evid. 702:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

Under its express terms, Rule 702 does not render all expert testimony admissible.[25] Further, even if the proposed expert testimony satisfies each of the elements set forth in the Rule, the testimony may still be excluded pursuant to the

---

[22] Rec. Doc. No. 54-1, p. 7.
[23] *Id.*
[24] *Daubert v. Merrell Dow Pharmaceutical, Inc.*, 509 U.S. 579 (1993), *Kumho Tire Co. v. Carmichael,* 526 U.S. 137 (1999),
[25] *United States v. Scavo*, 593 F.2d 837, 844 (8th Cir. 1979).

discretionary provisions of Fed. R. Evid. 403, which allow the Court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

When a *Daubert* challenge is made to the testimony of a proposed expert, a district court may, but is not required, to hold a hearing at which the proffered opinion may be challenged.[26] When a hearing is not held, "a district court must still perform its gatekeeping function by performing some type of *Daubert* inquiry."[27] "At a minimum, a district court must create a record of its *Daubert* inquiry and 'articulate its basis for admitting [or denying] expert testimony.'"[28]

The trial court is to serve as the gatekeeper for expert testimony by making a determination whether the expert opinion is reliable. As the Fifth Circuit has explained:

> [W]hen expert testimony is offered, the trial judge must perform a screening function to ensure that the expert's opinion is reliable and relevant to the facts at issue in the case. Daubert went on to make "general observations" intended to guide a district court's evaluation of scientific evidence. The nonexclusive list includes "whether [a theory or technique] can be (and has been) tested," whether it "has been subjected to peer review and publication," the "known or potential rate of error," and the "existence and maintenance of standards controlling the technique's operation," as well as "general acceptance." The Court summarized:
>
>> The inquiry envisioned by Rule 702 is, we emphasize, a flexible one. Its overarching subject is the scientific validity and thus the evidentiary relevance and reliability—of the principles that underlie a proposed submission. The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate.[29]

---

[26] *Carlson v. Bioremedi Therapeutic Systems, Inc.*, 822 F.3d 194, 201 (5th Cir. 2016).
[27] *Id.*
[28] *Id.*
[29] *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988-89 (5th Cir. 1997) (internal citations omitted).

Courts following *Daubert* have expanded upon the listed factors and explained that the list is not all-encompassing, and not every factor is required in every case.[30] Thus, courts may look to other factors, as well.[31] In *Fayard v. Tire Kingdom, Inc.*, this Court explained:

> The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and Daubert, which provide that the court serves as a gatekeeper, ensuring all scientific testimony is relevant and reliable. This gatekeeping role extends to all expert testimony, whether scientific or not. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). Under Rule 702, the court must consider three primary requirements in determining the admissibility of expert testimony: 1) qualifications of the expert witness; 2) relevance of the testimony; and 3) reliability of the principles and methodology upon which the testimony is based.[32]

The Supreme Court also recognized that not all expert opinion testimony is subject to examination by the same exact standard. Rather, the Court described the *Daubert* analysis as a "flexible" one, and "the factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise and the subject of his testimony."[33] Expanding on this, the Fifth Circuit has concluded that certain "soft sciences" involve "necessarily diminished methodological precision" when compared to other scientific disciplines like mathematics and engineering[34] and explained:

> In such instances, other indicia of reliability are considered under Daubert, including professional experience, education, training, and observations. Because there are areas of expertise, such as the "social sciences in which the research, theories and opinions cannot have the exactness of hard science methodologies", trial judges are given broad discretion to determine

---

[30] *See, e.g., General Electric Co. v. Joiner*, 522 U.S. 136, 143 (1997); *Guy v. Crown Equipment Corp.*, 394 F.3d 320, 325 (5th Cir. 2004).
[31] *See General Electric Co.*, 522 U.S. at 146.
[32] No. 09-171, 2010 WL 3999011, *1 (M.D. La. Oct. 12, 2010).
[33] *Kumho*, 526 U.S. at 150.
[34] *United States v. Simmons*, 470 F.3d 1115, 1123 (5th Cir. 2006) (quoting *Jenson v. Eveleth Taconite Co.*, 130 F.3d 1287, 1297 (8th Cir. 1997)).

"whether Daubert's specific factors are, or are not, reasonable measures of reliability in a particular case."[35]

The Court now turns to the challenged testimony and expert report conclusions and will consider them under the standards set forth above.

### B. Application

The Court has broad discretion in deciding whether to admit expert opinion testimony.[36] Applying the foregoing law and jurisprudence to the expert testimony challenged here, the Court finds that all four opinions expressed by Grafton must be excluded. First, the Court notes that no challenge has been made to Grafton's qualifications or expertise in the area proffered. Indeed, just recently, in *Jones v. Lollis*, this Court found that Grafton had the experience and education to opine on similar topics.[37] However, in *Jones*, this Court also excluded several conclusions/opinions offered by Grafton because:

> [S]ome of his conclusions and opinions go to the ultimate question to be determined by the jury or are stated as legal conclusions. Those specific portions of his proposed testimony will be limited. Grafton will not be permitted to give opinion testimony that certain acts or omissions violate the law or the Constitution. Grafton will not be permitted to opine as to the ultimate conclusions of fact.[38]

The same result is warranted as to the four opinions challenged herein. In each opinion, Grafton finds facts and/or draws legal conclusions regarding the reasonableness and necessity of Defendants' purported conduct.

---

[35] *Id.* at 1123 (citing *Kumho*, 526 U.S. at 153).
[36] *See, e.g., General Electric Co.*, 522 U.S. at 138-39 (holding that an appellate court's review of a trial court's decision to admit or exclude expert testimony under Daubert is made under the abuse of discretion standard); *Watkins*, 121 F.3d at 988 (holding that "[d]istrict courts enjoy wide latitude in determining the admissibility of expert testimony"); *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1050 (5th Cir. 1998) ("Trial courts have 'wide discretion' in deciding whether or not a particular witness qualifies as an expert under the Federal Rules of Evidence").
[37] No. 18-885-SDD-SDJ, 2020 WL 3469105 (M.D. La. June 25, 2020).
[38] *Id.* at *2.

Grafton's expert testimony and report were likewise challenged on similar grounds in *Brown v. Swain*.[39] There, the Eastern District of Louisiana court accepted certain opinions offered by Grafton as an expert in police policy and procedure; however, it excluded several opinions, finding that they were speculative, consisted of factual conclusions within the province of the jury, and consisted of improper legal conclusions.[40] The court likewise noted that, under the issues presented in that case, all references by Grafton to "deliberate" and "reasonable" conduct were inappropriate legal conclusions.[41]

The Fifth Circuit has also spoken on this issue and affirmed district courts that have excluded such expert testimony. The Fifth Circuit has specifically held that the reasonableness of an officer's use of deadly force is a legal conclusion.[42] In *Estate of Sowell v. United States*, the Fifth Circuit upheld the exclusion of expert testimony from a law professor on the question of whether an estate executor had acted reasonably; "[w]hether the Estate was 'acting reasonably' was, for all practical purposes, the only issue for the jury in this case to decide."[43]

Defendants also contend many of Grafton's report findings upon which his opinions are based are reached by improper credibility determinations and only Plaintiffs' view of the case; also, many statements found in Grafton's report are based on improper credibility determinations "supported" by improper/likely inadmissible/irrelevant evidence.

Similar challenges to expert testimony were raised before this Court in *Day v. Baton Rouge City Police*, wherein Magistrate Judge Wilder-Doomes excluded expert

---

[39] No. 09-2813, 2010 WL 3523026 (E.D. La. Aug. 31, 2020).
[40] *Id.* at *1-*2.
[41] *Id.* at *2.
[42] *Pratt v. Harris County, Tex.*, 822 F.3d 174, 181 (5th Cir. 2016); U.S. v. Williams, 343 F.3d 423, 435 (5th Cir. 2003); McBroom v. Payne, 478 F. App'x 196, 200 (5th Cir. 2012).
[43] 198 F.3d 169, 171-172 (5th Cir. 1999).

testimony rendering conclusions regarding whether probable cause existed to arrest the plaintiff and any conclusions of "reasonableness" of the police officers' actions in arresting the plaintiff.[44] The Court also addressed improper credibility determinations offered by the expert (Najolia). The Court explained:

> Notwithstanding his qualifications in the area of law enforcement, training, and use-of-force, his opinions as to the existence of probable cause and the reasonableness of the BRPD's use of force on Plaintiff are nonetheless unreliable because they do not apply any particular analysis or methodology to the July 9 incident but merely accept one of two contested factual versions in this case. The Court fails to see how this will assist the jury in understanding the evidence or in reaching its own resolution of the factual questions, especially in a case, like this one, where multiple videos and photographs depict some of the events of July 9, and each side believes the evidence supports its version of those events. Najolia is not in a better position, despite his law enforcement expertise, to opine as to whether the evidence establishes probable cause and/or excessive force. **In simply accepting Defendants' version of the facts, Najolia's report artificially bolsters and potentially elevates Defendants' version without any apparent basis for such enhanced credibility. This presents the type of danger that the gatekeeping function of *Daubert* is intended to alleviate, *i.e.*, the danger that the purported expert testimony will receive unwarranted weight and will encourage the factfinder to give more weight to one side's contention than is warranted**.[45]

> While the issues with the facts upon which Najolia relies to reach his conclusions might be properly addressed through cross-examination, Najolia's opinions regarding probable cause and excessive force also go beyond "embracing" ultimate issues of law and fact[46] and instead offer "ultimate legal conclusions," for which "[t]he judge is the source of law and the only expert needed by a jury."[47] Although the Fifth Circuit has explained

---

[44] No. 17-328-EWD, 2020 WL 7024478, *5 (M.D. La. Nov. 30, 2020).
[45] *Id.* at *5 (emphasis added).
[46] *Id.* (quoting Fed. R. Evid. 704 ("An opinion is not objectionable just because it embraces an ultimate issue."). *See also Goodman v. Harris County*, 571 F.3d 388, 399 (5th Cir. 2009)).
[47] *Id.* (quoting *Manton v. Strain*, No. 09-339, 2010 WL 4364480, at *2 (E.D. La. Oct. 21, 2010) (quoting *Bodzin v. City of Dallas*, 768 F.2d 722, 725 (5th Cir. 1985)). *See also Hayward v. Landry*, No. 02-927, 2006 WL 8432349, at *1 (M.D. La. Aug. 3, 2006) (explaining that expert testimony on "ultimate questions of law is not favored" and that "[t]he distinction between ultimate facts and ultimate questions of law is important because testimony on ultimate factual questions aids the jury in reaching a verdict while testimony which articulates and applies the relevant law ... circumvents the jury's decision-making function by telling them how to decide the case," and referencing numerous cases where "federal circuits have held that an expert witness may not give an opinion on ultimate issues of law." (internal quotations and citations omitted)); *Tolan v. City of Bellaire*, No. 09-1324, 2015 WL 12765413, at (S.D. Tex. Aug. 27, 2015) (noting that both

that Rule 704 "abolished the *per se* rule against testimony regarding ultimate issues of fact, 'courts must remain vigilant against the admission of legal conclusions, and an expert witness may not substitute for the court in charging the jury regarding the applicable law.'"[48] Whether probable cause existed at the time of Plaintiff's arrest is an ultimate question for the jury to decide.[49] So too is the reasonableness of the officers' actions in arresting and using force on Plaintiff.[50]

---

sides are "correct" in arguing that "the other's expert cannot provide opinions on purely legal issues, and precluding both experts from offering legal conclusion opinions" at trial)).

[48] *Id.* (quoting *Manton*, 2010 WL 4364480, at *2 (quoting *United States v. Milton*, 555 F.2d 1198, 1203 (5th Cir. 1977))).

[49] *Id.* (citing *Graham v. Dallas Area Rapid Transit*, 288 F.Supp.3d 711, 730-32 (N.D. Tex. Dec. 28, 2017) (excluding defendants' law enforcement experts' opinions (a) that "any officer in the same or similar circumstances as Defendant Officers could reasonably believe probable cause existed" and (b) that "the totality of the circumstances, including the video of the incident and conduct of [plaintiff], could lead any officer in the same or similar circumstances to believe probable cause existed to arrest [plaintiff]" under Fed. R. Evid. 702, *Daubert*, and *Kuhmo*, because the experts' reports were "ridded with legal conclusions concerning probable cause," did not "preface [their] conclusions with the legal standards for probable cause," did not "address whether [they] had sufficient facts to reach [their] conclusions or discuss procedures or methodologies in the area of policing including those employed in the course of making a lawful arrest," and accepted "carte blanche, the Officers' version of the facts while labeling [plaintiff's] version of the events as merely 'allegations' or 'claims,' which implies his version is open to challenge, debate, or doubt," among other reasons.). *See also Hayward*, 2006 WL 8432349, at *3 (precluding plaintiff's expert from "giving any testimony on the issue of probable cause," which is a statement of a legal conclusion); *Manton*, 2010 WL 4364480 (excluding plaintiff's law enforcement expert from testifying at trial about probable cause and other issues)).

[50] *Id.* (citing *Graham*, 288 F.Supp.3d at 730-32 (excluding defendants' law enforcement experts' opinions (a) that "the Defendant Officers' use of force was reasonable, necessary, and only to the level of force necessary to accomplish a legitimate police objective and overcome [plaintiff's] violent resistance" and (b) that "any officer in the same or similar circumstances as [Defendant Officers] could reasonably believe that [his or her] use of force was reasonable, necessary, and only the level needed and could have acted in the same or similar manner as [Defendant Officers]" under Fed. R. Evid. 702, *Daubert*, and *Kuhmo*, because the experts' reports were "ridded with legal conclusions concerning ... use of force," did not "preface [their] conclusions with the legal standards for ... use of force," did not "address whether [they] had sufficient facts to reach [their] conclusions or discuss procedures or methodologies in the area of policing including those employed ... in determining whether the use of force was excessive on a continuum of force," and accepted "carte blanche, the Officers' version of the facts while labeling [plaintiff's] version of the vents as merely 'allegations' or 'claims,' which implies his version is open to challenge, debate, or doubt," among other reasons.). *See also Renfroe v. Parker*, 974 F.3d 594, 598 (5th Cir. 2020) (holding that it is "error to allow expert testimony on whether an officer used unreasonable force," and affirming district court's exclusion on summary judgment of plaintiff's expert's report opining that the officer's "use of deadly force ... was unnecessary and objectively unreasonable and ... violated well-established law enforcement use of force training and standards and was a greater level of force than any other reasonable officer would have used under the same or similar circumstances ..."); *U.S. v. Williams*, 343 F.3d 423, 435 (5th Cir. 2003) (finding that district court erred by admitting an officer's testimony about the reasonableness of another officer's use of force [i.e., shooting] because "Rule 704(a) does not allow a witness to give legal conclusions" and "[r]easonableness [of an officer's use of force] under the Fourth Amendment or Due Process Clause is a legal conclusion." (internal citations omitted)); *Lehman v. Leichliter*, No. 03-1432, 2004 WL 5482307, at *2-4 (W.D. La. Nov. 30, 2004) (restricting experts' testimony to be offered at trial after finding that expert testimony on whether an officer's use of force was "objectively reasonable under the totality of the circumstances will not provide meaningful assistance to the jury" because (1) "[a] jury is fully capable of considering the circumstances and making a determination as to whether the use of force was reasonable under the circumstances" and (2) "[t]here is a real danger that the jury could end up believing that the

In *Westcott v. Crinklaw*, the Eighth Circuit held that an expert may not usurp the exclusive function of the jury in weighing evidence and determining credibility, or pass judgment on a witness' truthfulness, under the guise of a professional opinion.[51] Indeed, "[e]xpert testimony requires more than 'subjective belief or unsupported speculation.'"[52] Further, "expert testimony may not usurp the jury's authority to make credibility determinations."[53]

In *Amin-Akbari v. City of Austin, Tex.*, the Western District of Texas found that an expert's opinion as to which witnesses should be believed was not helpful to the trier of fact as "it is the province of the jury to evaluate the credibility and weigh the (occasionally conflicting) evidence."[54] In *McBroom v. Payne*, the Southern District of Mississippi held that, "[w]hether a witness is to be believed by the jury or not is beyond the competency of any witness. It does not take an expert to determine motivations in telling or not telling the truth...."[55]

---

ultimate issues before it are what the expert says they are."); *Tolan v. City of Bellaire*, No. 09-1324, 2015 WL 12765413, at *3 (S.D. Tex. Aug. 28, 2015) ("Clearly, expert opinions as to the reasonableness of a police officer's use of force are objectionable and inadmissible legal conclusions." (citations omitted)). But *cf. Hayward*, 2006 WL 8432349, at *2 (explaining (1) that "[u]nlike the issue of probable cause, expert witnesses may be used in excessive force cases" if such testimony "would assist the lay juror" and (2) that expert testimony in "bare hands" cases—as opposed to those involving "handcuffs, a gun, a slapjack, mace, or some other tool"—"might not be helpful" to a lay juror because "[m]ost individuals have been in a physical altercation at one point in their lives, be it through horseplay or something more serious," and permitting plaintiffs' expert to testify about whether excessive force was used against plaintiff, given that the "alleged excessive force in the case at bar [i.e., the negligent use of handcuffs] involves more than the use of 'bare hands.'").
[51] 68 F.3d 1073, 1076 (8th Cir. 1995).
[52] *Prejean v. Satelite Country, Inc.*, 474 S.Supp.3d 829, 834 (W.D. La. 2020)(quoting *Daubert*, 509 U.S. at 590, 113 S.Ct. 2786).
[53] *Charalambopoulos v. Grammer*, No. 3:14-CV-2424-D, 2017 WL 930819, at *17 (N.D. Tex. Mar. 8, 2017) (citations omitted). *See also Skidmore v. Precision Printing & Pkg., Inc.*, 188 F.3d 606, 618 (5th Cir. 1999) (stating that "[c]redibility determinations, of course, fall within the jury's province" in relation to a challenge to expert testimony).
[54] 52 F. Supp. 3d 830, 848 (W.D. Tex. 2014).
[55] No. 1:06CV1222-LG-JMR, 2011 WL 1356925, at *3 (S.D. Miss. Apr. 11, 2011), *aff'd,* 478 F. App'x 196 (5th Cir. 2012)(internal quotation marks and citation omitted).

In *Chipley v. Brownlow*, the Southern District of Mississippi relied on persuasive - but not binding - authority on this issue, stating:

> "There is a critical distinction between an expert testifying that a disputed fact actually occurred or that one witness is more credible than another and an expert giving an opinion based upon factual assumptions, the validity of which are for the jury to determine. The former is manifestly improper, the latter is not." *Richman v. Sheahan*, 415 F. Supp. 2d 929, 942 (N.D. Ill. 2006). Thus, an expert may testify to opinions where her opinion is based on facts, the truth of which she would or could not testify to.[56]

This means, for example, that an expert could properly testify to his opinion about whether a certain action by the defendant in a certain circumstance, assuming that those are the facts, would be inconsistent with applicable policies or standards.  *See id.* However, **for the expert to not only base his opinion on an assumption that his client's version of the events is true, but to actually adopt and endorse that version of the events "would be improper usurpation of the jury's role**." *Id.* (citing *United States v. Whitted*, 11 F.3d 782, 785–86 (8th Cir. 1993) (expert's "opinion that sexual abuse has in fact occurred" is not ordinarily admissible, nor can an expert "pass judgment on the alleged victim's truthfulness in the guise of a medical opinion, because it is the jury's function to decide credibility")). *See also United Healthcare Of Wisconsin Inc. v. See*, No. 09-C-0094, 2012 WL 4516704, at *2 (E.D. Wis. Sept. 30, 2012) (distinguishing between expert who assumes one party's version of the facts is true and gives opinion on that version of the facts and one who "has analyzed all of the witness statements and would present an understanding of all of the underlying facts" and "[tells] the jury which facts to believe or [testifies] as to [a witness's] credibility").[57]

In *Albert v. City of Petal*, the Southern District of Mississippi explained that, pursuant to Fifth Circuit jurisprudence, "expert witnesses are not permitted to provide commentary on the credibility of fact witnesses."[58]  The *Albert* court, therefore, excluded

---

[56] *Id.* at *4 (quoting *Thomas v. Barze*, 57 F. Supp. 3d 1040, 1059 (D. Minn. 2014)).
[57] *Id.*
[58] No. 2:18-CV-96-KS-MTP, 2019 WL 10736149 at *9 (S.D. Miss., Sep. 30, 2019)(quoting *McBroom*, 2011 WL 1356925 at *3); *United States v. Beasley*, 72 F.3d 1518, 1528 (5th Cir. 1996)("Absent unusual circumstances, expert medical testimony concerning the truthfulness or credibility of a witness is inadmissible.")).

expert testimony that constituted "improper expert commentary on the credibility of a fact witness."[59]

Considering the challenged conclusions and statements of Grafton's report, the Court finds, based on the foregoing jurisprudence and lack of Plaintiffs' efforts to specifically address Defendants' challenges, Grafton's expert testimony and the portions of these statements in the report shall be excluded.  The Court recognizes that "the rejection of expert testimony is the exception rather than the rule."[60]  However, as gatekeeper, this Court must only allow the admission of expert testimony that is reliable and relevant. For the reasons set forth above, the Court concludes that the majority of Grafton's proposed testimony should be excluded.  Based on his education, training and experience, Grafton is certainly qualified and may testify as to applicable standards and well-established police policy and procedure. However, he will not be permitted to offer opinions that draw legal conclusions, make findings of fact, or address the credibility of any witness, including his analysis/evaluation and/or interpretation of evidence as supporting his conclusions as to the credibility of any witness or a particular version of the facts.  Accordingly, Defendants' *Motions in Limine*[61] are GRANTED to the extent set forth herein.

Baton Rouge, Louisiana, this 11th day of February, 2020.

_____
SHELLY D. DICK
CHIEF DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA

---

[59] *Id.*
[60] Fed. R. Evid. 702, Adv. Comm. Notes (2000).
[61] Rec. Doc. Nos. 50 & 52.