# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

NICHOLAS A. FETTY, ET UX.                    CIVIL ACTION NO.


VERSUS                                        18-945-SDD-RLB


THE CITY OF BATON ROUGE, CHIEF
MURPHY J. PAUL, JR., CHIEF OF POLICE,
BATON ROUGE CITY POLICE; SECRETARY
JAMES M. LEBLANC, LA DEPT. OF PUBLIC
SAFETY AND CORRECTIONS; COL. KEVIN W.
REEVES, SUPERINTENDENT, LA STATE POLICE;
OFFICER BRIAN STRONG, BRPD; SEVEN (7) YET
TO BE IDENTIFIED LA STATE TROOPERS

## <u>RULING</u>

This matter is before the Court on the *Motion for Summary Judgment*[1] by Defendants, The City of Baton Rouge/Parish of East Baton Rouge ("City/Parish"), Chief of Police, Murphy J. Paul, Jr. ("Chief Paul"), Officer Brian Strong ("Strong"), Officer Joel Pattison ("Pattison"), and Officer Brian Watson ("Watson")(or collectively, "Defendants"). Plaintiffs Nicholas A. Fetty ("Fetty" or "Plaintiff") and Emily Fetty ("Emily" or "Plaintiffs") have filed an *Opposition*[2] to this motion, to which Defendants filed a *Reply*,[3] and Plaintiffs filed a *Sur-reply*.[4] For the following reasons, the Court finds that Defendants' motion should be granted in part and denied in part.

---

[1] Rec. Doc. No. 51.
[2] Rec. Doc. No. 56.
[3] Rec. Doc. No. 80.
[4] Rec. Doc. No. 82.

Document Number: 65121                                                         1

After the filing of Defendants' initial *Motion for Summary Judgment* and Plaintiffs' *Opposition*, the Court advised[5] all Parties that their *Statements of Undisputed/Disputed Facts* failed to comply with Local Rule 56(f)[6] and Local Rule 56(c).[7] The Court allowed the Parties to cure the deficiencies and assigned deadlines to do so.[8] The Defendants filed an *Amended Statement of Facts* on October 30, 2020[9] and a supplemental memo in support of their motion.[10] Plaintiffs filed a supplemental memo in opposition to Defendants' supplemental memo,[11] but were notified by the Clerk of Court's office that this filing did not comply with Local Rule 7(g).[12] Notably, Plaintiffs' supplemental opposition brief still does not contain a separate statement of disputed facts that complies with the Local Rules; the section entitled "Statement of Facts" does not address Defendants' statements with an admission, denial, or qualification as required, and not a single "fact" offered is supported by citation to record evidence.

In response to the Clerk's deficiency notice, Plaintiffs moved to substitute their supplemental memo;[13] however, this motion did not comply with Administrative Procedure Rule I(B)(6), which requires that the proposed pleading be attached to the motion. Although the Court nevertheless granted the motion, expecting Plaintiffs to file the substitute brief, no substitute pleading was ever filed or submitted to the Clerk of Court's office.

Accordingly, Plaintiffs have again failed to submit a statement of facts in

---

[5] Rec. Doc. No. 72.
[6] Defendants failed to provide record citations for their statements.
[7] Plaintiffs failed to admit, deny, or qualify the Defendants' statement of facts.
[8] *Id.*
[9] Rec. Doc. No. 73.
[10] Rec. Doc. No. 80.
[11] Rec. Doc. No. 82.
[12] Rec. Doc. No. 83.
[13] Rec. Doc. No. 84.

Document Number: 65121

compliance with Local Rule 56(c) and (f) and this Court's Order at Rec. Doc. No. 72.  As Plaintiffs have failed to controvert the *Statement of Undisputed Facts* offered by Defendants and supported by competent summary judgment evidence, many facts are deemed admitted for purposes of this motion. Nevertheless, another section of this Court explained in *Braud v. Wal-Mart Stores, Inc.* that "case law recognizes that the Court can still consider record evidence to determine if there is a factual dispute."[14]  To the extent Plaintiffs have directed the Court to specific, countervailing summary judgment evidence demonstrating genuine disputes of material fact in this matter, the Court will consider same.

## I.    FACTUAL BACKGROUND

On November 1, 2017, Plaintiffs attended a concert at the Texas Club in Baton Rouge, Louisiana.[15]  That night, Fetty was arrested in the parking lot of the club by several officers with the Louisiana State Police Fugitive Task Force.[16]  Fetty acknowledges that the arrest was made pursuant to an arrest warrant for his alleged conduct that occurred about two weeks prior to his arrest, on or about October 13, 2017, in a subdivision south of the campus of Louisiana State University.[17]  An arrest warrant for Fetty alleged  false imprisonment while armed with a dangerous weapon and simple assault was issued.[18]

---

[14] 2019 WL 3364320 at *4 (M.D. La. July 25, 2019)(citing *Smith v. Brenoettsy*, 158 F.3d 908, 910 (5th Cir. 1998)(holding, where plaintiff failed to oppose the motion for summary judgment, that facts in "Statement of Undisputed Facts" were admitted, "except to the extent that the 'facts' in the 'Statement of Undisputed Facts' are contradicted by 'facts' in other materials attached to his motion for summary judgment." (citation omitted)); *Porter v. Dauthier*, No. 14-41, 2015 WL 5611647, at *8, *13 (M.D. La. Sept. 23, 2015) (deGravelles, J.) (relying on *Smith* and holding, when Plaintiff's opposition left "no doubt about his disagreement with either the basis or import of each of Plaintiff's undisputed facts," that Plaintiff would have forty-eight hours from the issuance of the ruling to comply with the Local Rule, and ultimately denying the motion for summary judgment)).
[15] Rec. Doc. No. 1, ¶ 6.
[16] *Id.* at ¶¶ 11-12.
[17] Rec. Doc. No. 16 at 2.
[18] *Id.* at 5.

Fetty claims that the officers used unreasonable and excessive force in making this arrest, and as result, he suffered significant injuries, including a laceration to his nose, unconsciousness that required transport to the hospital, and associated "pain and suffering, mental anguish, aggravation, and inconvenience."[19]  Emily Fetty appears to allege a loss of consortium claim.  Fetty filed this lawsuit asserting that Defendants violated his federal constitutional rights pursuant to 42 U.S.C. § 1983 and violated his rights under the Louisiana Constitution and tort law.

The following facts are deemed admitted as they are uncontroverted by Plaintiffs. Strong is a detective with the Baton Rouge Police Department in the Violent Crimes Unit.[20]  Strong is not a member and has never been a member of the Louisiana State Police/Fugitive Apprehension Unit ("LSP/FAU" or sometimes referred to as "the Fugitive Taskforce").[21]  On October 26, 2017, in his capacity as BRPD Detective working with the Violent Crimes Unit, Strong was assigned Case No. 107918-17 for follow up investigation regarding Nicholas Fetty for suspicion of  Simple Battery and False Imprisonment while Armed with a Dangerous Weapon.[22]

On October 31, 2017, Strong prepared an Affidavit For Arrest Warrant, summarizing his basis for charges against the plaintiff, Nicholas Fetty, as follows: (a) Strong received video footage, recorded by employees of the Louisiana State Board of Private Security Examiners on October 13, 2017, corroborating the complaint of the victim. Through that video, he was able to personally compare Nicholas Fetty's driver's license photo with the footage, and positively identified Nicholas Fetty as being armed

---

[19] Rec. Doc. No. 1, ¶¶ 13-18.
[20] Rec. Doc. No. 51-2, Affidavit of Brian Strong, ¶ 2.
[21] *Id.* at ¶ 3.
[22] *Id.* at ¶¶ 4-6; Rec. Doc. No. 74-4.

and engaged in improper detention of a citizen; and (b) Strong then confirmed the identification, by having the victim review a photographic lineup, and by interviewing an investigator and the executive director of the Louisiana State Board of Private Security Examiners, all of whom confirmed the identity of Nicholas Fetty.[23]

On October 31, 2017, the Honorable Judge Richard Moore signed an arrest warrant for suspect Nicholas Aron Fetty for Simple Battery and False Imprisonment while Armed with a Dangerous Weapon.[24] The arrest warrant was filed with the Clerk of Court and placed into the National Crime Information Center (NCIC) Database.[25] On November 1, 2017, the LSP/FAU received the active felony arrest warrant for Nicholas Fetty for the charges of Simple Battery and False Imprisonment while Armed with a Dangerous Weapon.[26] On November 1, 2017, the LSP/FAU contacted Nicholas Fetty via telephone and requested that he meet them at LSP Headquarters, to which Fetty responded that he would not submit.[27]

On November 1, 2017, Nicholas Fetty was attending a concert at the Texas Club.[28] The Fugitive Task Force executed the felony arrest warrant for the arrest of Nicholas Fetty on November 1, 2017 at 456 N. Donmoor Avenue, outside of the Texas Club in Baton Rouge, Louisiana.[29] The Fugitive Task Force apprehended Nicholas Fetty.[30] On November 1, 2017 at approximately 11:00 p.m., the LSP/FAU notified Detective Strong

---

[23] Rec. Doc. No. 74-4.
[24] *Id.*; Rec. Doc. No. 51-2, Affidavit of Brian Strong, ¶ 7.
[25] Rec. Doc. No. 51-2, Affidavit of Brian Strong, ¶ 7.
[26] *Id.* at ¶ 8.
[27] Rec. Doc. No. 33, ¶¶ 9-10; Rec. Doc. No. 74-6, Deposition of Nicholas Fetty, p. 23, line 13 through p. 24, line 8.
[28] *Id.* at ¶ 6.
[29] Rec. Doc. No. 56-4, Exhibit 4 to Plaintiffs' Opposition to Motion for Summary Judgment, State Police Incident Report.
[30] *Id.*; Rec. Doc. No. 33, ¶¶ 7-11; Rec. Doc. No. 51-2, Affidavit of Brian Strong, ¶ 9.

that Fetty had been  apprehended.[31]

When Detective Strong responded to the scene, Fetty was handcuffed in the back of a white unmarked police vehicle. Nicholas Fetty was properly advised of his rights, and he signed a consent to search form allowing Strong to search his vehicle.[32]  Strong attests that he did not use any force, threats, or promises to make Nicholas Fetty sign the consent to search form.[33]  Strong retrieved a pistol and badge from Fetty's vehicle.[34]  Strong then transported Nicholas Fetty to the Violent Crimes Unit office, where he was interviewed by Strong. In the video of the interview, Fetty presents as well-oriented to date, time and place, is fully engaged in the conversation with Strong and his partner, Detective Terrell Averett, and aside from a minor abrasion on the bridge of his nose, appears to be in good health.[35]  Plaintiff Nicholas Fetty testified in his deposition that he remembered the BRPD detective he spoke to after he was apprehended, and that he did not arrive on the scene until after Fetty was in handcuffs.[36]

Nicholas Fetty has not sought medical treatment for any purported injuries following his release from the East Baton Rouge Parish Prison the day following his arrest, November 2, 2017.[37]

Plaintiff Emily Fetty exited the Texas Club after Nicholas Fetty had been arrested.[38] According to her deposition testimony, she did not see any improper activity by the

---

[31] Rec. Doc. No. 51-2, Affidavit of Brian Strong, ¶ 9.
[32] *Id.* at ¶ 8; Rec. Doc. No. 81, Exhibit F, body camera footage of Detective Brian Strong; Rec. Doc. No. 74-3, Affidavit of Brian Strong, ¶ 6.
[33] Rec. Doc. No. 74-3, Affidavit of Brian Strong, ¶ 6.
[34] Rec. Doc. No. 81, Exhibit F, body camera footage of Detective Brian Strong; Rec. Doc. No. 74-6, Deposition of Nicholas Fetty, p. 28, lines 5-16.
[35] Rec. Doc. No. 81, Exhibit G, video recording of interview of Nicholas Fetty; *see also,* Rec. Doc. No. 74-6, Deposition of Nicholas Fetty, p. 29, line 19 through p. 30, line 7.
[36] Rec. Doc. No. 74-6, Deposition of Nicholas Fetty, p. 44, line 19 through p. 45, line 15.
[37] *Id.* at p. 42, lines 2-19.
[38] Rec. Doc. No. 74-7, Deposition of Emily Fetty, p. 5, lines 8-21; p. 8, lines 15-18.

Fugitive Task Force, nor any by any other officer.[39] Plaintiff Emily Fetty has incurred no medical expenses for her loss of consortium claim.[40]  After posting $659 in bond, Fetty was released from East Baton Rouge Parish Prison and picked up by his wife, Emily Fetty.[41]

Defendants move for summary judgment, arguing that Plaintiffs have offered no summary judgment evidence to support their claims, and in some instances have failed to properly plead their claims. Plaintiffs oppose the motion.

## II.    LAW AND ANALYSIS

### A.  Summary Judgment Standard

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[42] The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact.[43]  A court must deny the motion for summary judgment if the movant fails to meet this burden.[44]

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial."[45] This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his

---

[39] Rec. Doc. No. 74-6, Deposition of Nicholas Fetty, p. 27, lines 7-18.
[40] Exhibit J, Plaintiffs' Answers to Interrogatories, January 5, 2020, Page 9, Interrogatory and Answer 13.
[41] Rec. Doc. No. 74-7, Deposition of Emily Fetty, p. 7, line 24 through p. 8, line 14; Rec. Doc. No. 74-6, Deposition of Nicholas Fetty, p. 31, lines 4-12. *See also*, Exhibit J, Plaintiffs' Answers to Interrogatories, January 5, 2020, Pages 8- 9, Interrogatory and Answer 12.
[42] Fed. R. Civ. P. 56.
[43] *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995).
[44] *Id.*
[45] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted).

claim.[46] "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[47]

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment.[48] The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.[49] Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party.[50]

### B. Federal Claims under 42 U.S.C. § 1983

The Civil Rights Act of 1964, 42 U.S.C. § 1983, creates a private right of action for redressing the violation of federal law by those acting under color of state law.[51] It provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured....[52]

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights conferred elsewhere.'"[53]

---

[46] *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990).

[47] *Anderson*, 477 U.S. at 249 (citations omitted).

[48] *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

[49] *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000).

[50] *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

[51] *See Migra v. Warren City School District Board of Educ.*, 465 U.S. 75, 82 (1984); *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n*, 453 U.S. 1, 19 (1981).

[52] 42 U.S.C. § 1983.

[53] *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, (1979)); *accord Graham v. Connor*, 490 U.S. 386, 393–94 (1989); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985); *Jackson v. City of Atlanta, TX*, 73 F.3d 60, 63 (5th Cir.), *cert. denied*, 519 U.S. 818 (1996); *Young v. City of Killeen*, 775 F.2d 1349, 1352 (5th Cir.1985).

To prevail on a Section 1983 claim, a plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States.[54]  A Section 1983 complainant must support his claim with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations.[55]

### C.  Municipal Liability under *Monell*

Municipalities and other bodies of local government are considered "persons" who may be sued directly under Section 1983.[56] However, "a municipality cannot be held vicariously liable for the constitutional torts of its employees or agents."[57] In other words, "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."[58] Thus, ordinarily, municipal liability must be based on a municipal "policy" or "custom" that caused the plaintiff's injury.[59]  Municipal liability under § 1983 requires proof of three elements: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom."[60]

The first element, existence of an official policy or custom, can be shown in at least three ways. First, there may be a policy that is "officially adopted and promulgated" by the

---

[54] *See Blessing v. Freestone,* 520 U.S. 329, 340 (1997); *Daniels v. Williams,* 474 U.S. 327, 330 (1986); *Augustine v. Doe*, 740 F.2d 322, 324–25 (5th Cir.1984).
[55] *See Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995); *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir.), *cert. denied*, 498 U.S. 908 (1990); *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir.1986); *Angel v. City of Fairfield*, 793 F.2d 737, 739 (5th Cir.1986).
[56]  *Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).
[57] *Gros v. City of Grand Prairie*, 181 F.3d 613, 615 (5th Cir.1999).
[58] *Monell*, 436 U.S. at 691, 98 S.Ct. 2018.
[59] *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).
[60] *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir.2010)(quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir.2002)).

municipality or by an official with policymaking authority.[61] Second, there may be a "persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy."[62] Third, a "single decision by a policy maker may, under certain circumstances, constitute a policy for which a [municipality] may be liable."[63]

A municipality may be liable under Section 1983 if it maintained a widespread, persistent practice of allowing the use of excessive police force.[64]  In meeting the burden of showing that a municipality maintained such a practice, a plaintiff may attempt to prove other similar incidents of the use and toleration of excessive force.[65]  It is also well-settled that "a City policy of inadequate officer discipline could be unconstitutional if it was pursued with deliberate indifference toward the constitutional rights of citizens," and could be evidenced by a "purely formalistic investigation."[66] A municipality may be also liable under Section 1983 for inadequate training of officers if the failure to train amounts to deliberate indifference to the rights of persons the police regularly encounter.[67]

In the *Amended Complaint*, Plaintiffs name the City of Baton Rouge as a Defendant and plead the following allegations against it:  negligence in hiring, supervising, and training defendants; failure to properly train various officers; and failure to properly

---

[61] *Burge v. St. Tammany Parish* (*Burge II*), 336 F.3d 363, 369 (5th Cir.2003).
[62] *Id.*
[63] *Valle*, 613 F.3d at 542 (alteration in original)(quoting *Brown v. Bryan County*, 219 F.3d 450, 462 (5th Cir.2000)).
[64] *See Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir.1984)
[65] *Id.*
[66] *Piotrowski v. City of Houston*, 237 F.3d 567, 581–82 (5th Cir.2001).
[67] *City of Canton*, 489 U.S. at 388, 109 S.Ct. 1197.

supervise officers regarding use of force.[68]  No other allegations are asserted against the City/Parish.

The City/Parish moves for summary judgment on the *Monell* claims asserted against it.  The City/Parish contends Plaintiffs "failed to allege, much less substantively demonstrate, an official policy or custom which caused the deprivation of a constitutional right or a policymaker who can be charged with actual or constructive knowledge."[69]  The City/Parish also argues Plaintiffs "failed to allege any specific deficiencies with the training or supervision of that could be attributed to any constitutional violations" as required by law.[70]  The City Parish further claims that Plaintiffs have not asserted any specific allegations "as to the deficiency of training and have made no efforts by way of discovery to determine the actual training of any of the City/Parish defendants."[71]

Plaintiffs ignore entirely the City/Parish's argument that Plaintiffs' municipal liability claims fail to pass the pleadings stage.  Indeed, Plaintiffs fail in their *Opposition* to demonstrate the requisite elements identifying a custom or policy of insufficient or inadequate hiring, training, or supervising or demonstrating how such training was specifically deficient.  Plaintiffs seem to rely solely on their expert, W. Lloyd Grafton ("Grafton"), who explained that "Louisiana Law Enforcement Officers are trained in PPCT (Pressure Point Control Tactics), a Use of Force program that teaches officers to use proportionate levels of control to counter resistance from suspects."[72]  Grafton further opines that the defendant-officers "failed to follow their PPCT Training" when arresting

---

[68] Rec. Doc. No. 33, pp. 6-7.
[69] Rec. Doc. No. 51-1, pp. 6-7.
[70] *Id.* at p. 7.
[71] Rec. Doc. No. 80, p. 6.
[72] Rec. Doc. No. 56-5, p. 7.

Fetty.[73]  Thus, even Grafton does not conclude that the City/Parish failed to properly train

the officers – notably, he concludes they *were* trained; nor do Plaintiffs direct the Court to

record evidence that failure to hire/train/supervise employees actually occurred, was a

widespread pattern or practice, or how any purported hiring/training/supervision policy

was specifically deficient.  Indeed, no facts were actually pled to support these claims in

the first place.  Plaintiffs recite their allegations:

> The Baton Rouge City Police and Colonel Reeves were negligent in hiring,
> supervising and training the defendants, the yet to be identified seven (7)
> Louisiana State Troopers and Officer Brian Strong. The Baton Rouge City
> Police and Colonel Reeves failed to properly instruct or train the yet to be
> identified seven (7) Louisiana State Troopers and Officer Brian Strong,
> particularly in the grounds for the use of force in the course of an arrest,
> investigatory stop or other seizure, and to properly supervise them the
> performance of their use of force and to instruct them in the proper method
> of making an arrest with respect to when and how much force should be
> used.[74]

First, even if it could be inferred from the allegations that Plaintiffs are identifying

a custom or policy, the above allegations address only the alleged failure to instruct on

use of force; there are no factually specific allegations relating to hiring or supervision.

Second, the allegations relate only to the purported failed training of the seven

Defendants named in this action.  There are no allegations that any policy or custom is a

widespread pattern or practice.  Finally, "[a]t the summary judgment stage, the plaintiff

can no longer rest on the pleadings and the court looks to the evidence before it, in the

light most favorable to the plaintiff."[75] As set forth above, there is no evidence before the

Court to support the conclusory allegations pled.  Therefore, the Court grants summary

---

[73] *Id.* at pp. 2-3.
[74] Rec. Doc. No. 33.
[75] *Bruton v. Shreveport Police Department Officers*, 2019 WL 8220665, *3 (W.D. La. Oct. 15, 2019)(citing *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002)).

judgment and shall dismiss the Section 1983 *Monell* claims against the City/Parish.

### D.    Qualified Immunity

Because qualified immunity is "an immunity from suit rather than a mere defense to liability, ... it is effectively lost if a case is erroneously permitted to go to trial."[76]  While qualified immunity is technically an affirmative defense, it is a plaintiff's burden to negate the defense once it has been raised.[77]

The issue of qualified immunity requires the Court to make a two-part inquiry: (1) whether the facts alleged or shown by the plaintiff demonstrate a violation of a constitutional right, and (2) if a violation has been established, whether the officer's actions were objectively reasonable in light of clearly established law at the time of the alleged misconduct.[78] A court may begin its analysis of qualified immunity with either prong.[79]    At the summary judgment stage, a plaintiff satisfies the first prong by establishing that "genuine issues of material fact exist regarding the reasonableness of the official's conduct."[80] This proof need not be "absolute," but must consist of more than "mere allegations."[81] The second prong requires that "[t]he constitutional right must be sufficiently clear to put a reasonable officer on notice that certain conduct violates that right."[82]

A public official may assert the defense of qualified immunity even though a plaintiff's civil rights have been violated if the official's conduct was objectively

---

[76] *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).
[77] *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).
[78] *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).
[79] *Gibson v. Kilpatrick*, 773 F.3d 661, 666 (5th Cir. 2014).
[80] *King v. Handorf*, 821 F.3d 650, 654 (5th Cir. 2016) (quoting *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008)).
[81] *Id.* (quoting *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009)).
[82] *Sanchez v. Swyden*, 139 F.3d 464, 466 (5th Cir. 1998).

reasonable.[83]  "The touchstone of this inquiry is whether a reasonable person would have believed that his conduct conformed to the constitutional standard in light of the information available to him and the clearly established law."[84]  To be clearly established, a legal principle must be found in the holdings of either "controlling authority" or a "robust 'consensus of cases of persuasive authority,'"[85] and defined with a "high 'degree of specificity.'"[86] However, the cases relied upon are not required to be identical. There may be "notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights."[87] The "clearly established" test ensures that officials have "fair warning" that certain conduct violates the Constitution.[88]

### E.  Individual Capacity Claims[89]

Defendants claim that all individual City/Parish Defendants – Chief Paul, Strong, Pattison, and Watson – are entitled to summary judgment on Plaintiffs' constitutional claims, arguing that Fetty suffered no constitutional violations.  Defendants further claim they are all entitled to qualified immunity.  Plaintiffs generally alleged that all named Defendants violated Fetty's Fourth, Eighth, and Fourteenth Amendment rights.[90]

---

[83] *Id*. at 467.

[84] *Goodson v. Corpus Christi,* 202 F.3d 730, 736 (5th Cir. 2000).

[85] *Ashcroft v. al-Kidd*, 563 U.S. 731, 741–42, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011) (quoting *Wilson v. Layne*, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)).

[86] *District of Columbia v. Wesby*, —— U.S. ——, 138 S. Ct. 577, 590, 199 L.Ed.2d 453 (2018) (quoting *Mullenix v. Luna*, 577 U.S. 7, 136 S. Ct. 305, 309, 193 L.Ed.2d 255 (2015) (per curiam)).

[87] *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (*en banc*) (quoting *Hope v. Pelzer*, 536 U.S. 730, 740, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002)).

[88] *Anderson v. Valdez*, 845 F.3d 580, 600 (5th Cir. 2016) (quoting *Kinney*, 367 F.3d at 350).

[89] In their first *Opposition* brief, Rec. Doc. No. 56, Plaintiffs clarified that the individual defendants were sued only in their individual capacities and not in their official capacities.

[90] *See* Rec. Doc. No. 2, ¶¶ 19-21.

1.  Excessive Force

To prove an excessive force claim, Fetty must demonstrate "(1) an injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable."[91]  Excessiveness turns upon whether the degree of force used was reasonable in light of the totality of the circumstances facing the officer in each case.[92] Relevant factors include the "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."[93]  When deciding whether to use force, officers must determine "not only the need for force, but also 'the relationship between the need and the amount of force used.'"[94] The reasonableness of the officers' conduct cannot be judged with the benefit of hindsight, but must be assessed from the viewpoint of a reasonable officer on the scene at that very moment.[95] Certainly,

> [n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers ... violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.[96]

"Excessive force claims are [thus] necessarily fact-intensive and depend[ ] on the facts and circumstances of each particular case."[97] The facts must be judged objectively

---

[91] *Ontiveros v. City of Rosenberg, Tex.*, 564 F.3d 379, 382 (5th Cir. 2009) (quoting *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007)).
[92] *Graham*, 490 U.S. at 396, 109 S.Ct. 1865 (citing *Tennessee v. Garner*, 471 U.S. 1, 8–9, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)).
[93] *Id.*
[94] *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (per curiam) (quoting *Gomez v. Chandler*, 163 F.3d 921, 923 (5th Cir. 1999)).
[95] *See Graham*, 490 U.S. at 396, 109 S.Ct. 1865.
[96] *Id*. at 396–97, 109 S.Ct. 1865 (internal citations and marks omitted).
[97] *Poole*, 691 F.3d at 628 (internal citations and marks omitted).

"without regard to [the officer's] underlying intent or motivation."[98]

### 2. Chief Paul

In Defendant's supplemental brief,[99] Chief Paul contends he is entitled to summary judgment on the excessive force claim as there is no evidence in the record to suggest that he was present at Fetty's arrest, and there is no mention of Chief Paul in Fetty's affidavits or Fetty's recorded interview.

In opposition, Plaintiffs utterly fail to address or controvert the fact that Chief Paul was not present and did not participate in the arrest.  Plaintiffs state general Section 1983 jurisprudence regarding individual capacity claims asserted against public officials, but do not respond with summary judgment evidence demonstrating a genuine issue of fact as to Chief Paul's personal participation in Fetty's arrest that would subject him to an individual capacity claim.  The Fifth Circuit has held that, in a claim asserted under Section 1983, "[a] plaintiff must establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation."[100] As there is no evidence that Chief Paul was present or had any personal involvement in Fetty's arrest, nor is there evidence of a causal connection, the Court need not address his entitlement to qualified immunity for this claim.  Thus, Chief Paul is entitled to summary judgment on the individual capacity Section 1983 claim asserted against him.

### 3. Detective Strong

According to Strong's affidavit and the body cam footage of the incident, Strong

---

[98] *Graham*, 490 U.S. at 397, 109 S.Ct. 1865.
[99] In Defendants' original brief supporting this motion (Rec. Doc. No. 51-1), they provided the Court with general legal standards, but did not apply the legal standards to the undisputed facts of the case or make specific arguments regarding the conduct of the individual Defendants.
[100] *James v. Texas Collin County*, 535 F.3d 365, 373 (5th Cir. 2008)(citing *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 1999)).

likewise contends he was not present during Fetty's arrest, he did not arrive on the scene until after Fetty was handcuffed, and he was also not present during the arrest and is therefore entitled to summary judgment on Fetty's excessive force claim.

Plaintiffs contend that there is a genuine issue of fact as to whether Strong participated in the initial moments of Fetty's arrest.  Fetty attested that, upon putting his hands up in response to the officers' approach, he was "physically thrown against the driver rear of the truck by the Louisiana State police Fugitive Task Force and/or Officer Brian Strong."[101]  Plaintiffs also contend that the absence of Affidavits by Pattison and Watson attesting that Strong was not present is "telling" and ostensibly evidence that there is a fact issue as to Strong's participation in the arrest.[102]  Plaintiffs posit: "The fact of whether Officer Strong was present and participated in the excessive force exerted upon Nicholas during and subsequent to his apprehension and arrest is and remains a genuine issue of material fact still in dispute, and Summary Judgment on that issue is not appropriate[.]"[103] In Plaintiffs' supplemental brief,[104] Plaintiff contends that there is no evidence submitted, save for the alleged "self serving Affidavit of … Strong," in support of Defendants' motion for summary judgment.[105]  No new arguments are raised regarding Strong's motion.

The Court is unpersuaded by Plaintiffs' characterization of Strong's affidavit as self-serving.  Indeed,

---

[101] Rec. Doc. No. 56-1, Affidavit of Nicholas Fetty, ¶ 10.

[102] Rec. Doc. No. 56, p. 11.

[103] *Id.*

[104] Because this document (Rec. Doc. No. 82) does not comply with the Local Rules of this Court, and this deficiency was never cured as set forth above, the Court has discretion to strike or not consider this document.  However, because the Court reaches the same conclusion in this matter, the Court will address Plaintiffs' arguments therein.

[105] Rec. Doc. No. 82, p. 4.

> "[a] party's own testimony is often 'self-serving,' but [a court] do[es] not exclude it as incompetent for that reason alone."[106]  Instead, testimony based on personal knowledge and containing factual assertions suffices to create a fact issue, even if it is self-serving.[107]  In fact, "characterizing a party's testimony as 'self serving' is not useful to the court. In a lawsuit, where each party is attempting to advance his own cause and protect his own interests, we are scarcely shocked when a party produces evidence or gives testimony that is 'self-serving.'"[108]

As the Fifth Circuit has noted, "[i]f all 'self-serving' testimony were excluded from trials, they would be short indeed."[109]

Plaintiffs have failed to direct the Court to summary judgment evidence demonstrating a genuine, material fact issue as to whether Strong participated in Fetty's initial arrest.  Plaintiffs have yet to present evidence that identifies Strong as participating during the arrest.   The argument that Strong's affidavit is self-serving is simply not competent summary judgment evidence contradicting Strong's affidavit.

Further, that Pattison and Watson failed to attest that Strong was not present is also not summary judgment evidence.  At the summary judgment stage, when the party moving for summary judgment meets its burden by showing the Court that there is an absence of evidence to support the non-moving party's case, the burden shifts to the non-moving party to "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims.[110]  To satisfy this burden,

> the non-moving party may not rest upon mere allegations or denials in his pleadings, but rather must set forth "specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."   A

---

[106] *Hardy v. Wood Group PSN, Inc.*, 2014 WL 1664236, *3 (W.D. La. Apr. 25, 2014)(quoting *C.R. Pittman Const. Co., Inc. v. Nat'l Fire Ins. Co. of Hartford,* 453 Fed. App'x 439, 443 (5th Cir.2011))(internal quotations omitted).

[107] *Id.* (citing *C.R. Pittman v. Nat'l Fire*, 453 Fed. App'x at 443).

[108] *Id.* (quoting *Dean v. Ford Motor Credit Co.*, 885 F.2d 300, 306 (5th Cir.1989)).

[109] *C.R. Pittman v. Nat'l Fire*, 453 Fed. App'x at 443)(citations omitted).

[110] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

party seeking to establish that a fact is genuinely disputed **must support such an assertion by reference to "materials in the record, including depositions, documents ... affidavits or declarations ... admissions, interrogatory answers, or other materials**."  The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."  There is no genuine issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[111]

The absence of attestations or affidavits regarding Strong's presence does not satisfy Plaintiffs' burden in this regard.  Moreover, Fetty's own deposition testimony belies Plaintiffs' claim against Strong:

> Q:   When you – the night you were arrested at the Texas Club, you mentioned that after you were arrested you met Baton Rouge detectives:
> A:   Correct.
> Q:   And then they took you back and they questioned you?
> A:   Yes, ma'am.
> Q:   Had you – did you see the Baton Rouge detectives before you were arrested?
> A:   No, ma'am.
> Q:   Okay.  Do you remember the Baton Rouge detectives who actually questioned you?
> A:   I remember them.  I don't recall their names, but I do remember.
> Q:   But you remember they were not there when you were actually arrested or handcuffed?
> A:   Not in my line of sight, no.[112]

In the absence of summary judgment evidence that Strong was present at the time of the arrest when the excessive force allegedly occurred, Strong is entitled to summary judgment on Plaintiffs' Section 1983 excessive force claim.

### 4.   Pattison and Watson

Defendants also contend Fetty's constitutional right under the Fourth Amendment

---

[111] *DeCossas v. St. Tammany Parish School Board*, No. 16-3786, 2017 WL 3971248 at *10 (E.D. La. Sep. 8, 2017)(internal citations omitted).
[112] Rec. Doc. No. 74-6, Deposition of Nicholas Fetty, p. 44, line 21 through p. 45, line 12.

was not violated because he was not subjected to excessive force. Regarding Pattison and Watson, Defendants claim Fetty cannot identify who actually touched him, and he misidentified Strong as being one of the officers making the arrest.  Defendants further argue that Fetty's affidavit[113]  "is essentially a reiteration of the allegations of the petition, and suffers the same problem – lack of identification."[114]  Defendants refers to the State Police Incident Report,[115] which notes that Watson assisted in getting handcuffs onto Nicholas Fetty, but the report does not mention any involvement by Pattison, and Pattison attested that he made no physical contact with Fetty.[116]

Defendants also contend that the video of Fetty's police interview demonstrates that he did not display any significant stress or injuries as he responded to Strong's questions.[117]  Defendants maintain that the body cam footage demonstrates that Fetty's exchange with Strong was a "polite interaction" wherein Strong obtained Fetty's signature on a consent to search form, and Fetty's overall demeanor and conduct is not consistent with having just endured the kind of beating he alleged.  While the scrape on Fetty's nose is visible in the video, Defendants contend this is the kind of "de minimis" injury that does not support an excessive force claim.

Defendants point to the arrest affidavit and warrant for Fetty, which sets forth that Fetty (and his associates) were known to carry firearms and tactical gear, causing Pattison and the responding officers to be on "high alert."[118]    Defendants argue:

---

[113] Rec. Doc. No. 56-1.
[114] Defendants also note that Fetty's deposition testimony lacks any identification, and at p. 24, line 9, through p. 25, line 5, Fetty cannot explain which officers were doing what.
[115] Rec. Doc. No. 56-4.
[116] Rec. Doc. No. 74-9, Affidavit of Joel Pattison, ¶ 6.
[117] Rec. Doc. No. 81, Exhibit G.
[118] Rec. Doc. No. 80, p. 8.

"Evaluating the arrest and force used in the context in which the force was deployed, Mr. Fetty's "injury" is nonexistent.  Mr. Fetty was not tased, or the recipient of chemical spray. His claims of painful strikes to the leg are belied by his smooth gait in the video recordings. The evidence does not support a claim of excessive force."[119]

While maintaining that Fetty's constitutional rights were not violated, Defendants alternatively argue that they are entitled to qualified immunity because the evidence in this case does not support a claim that the force used upon Fetty was objectively unreasonable.  Defendants point out that Fetty is shown walking and talking on the body cam footage and is animated and appears merely "annoyed with his arrest" in his subsequent interview.   Nothing in the video footage evinces someone suffering from severe injury or in need of major medical care.

As to excessive force, Plaintiffs again cite the expert testimony of Grafton -  who concluded that the force used upon Fetty was excessive and not objectively reasonable - and argue that their expert's conclusions demonstrate an issue of fact as to whether excessive force was used, resulting in a violation of Fetty's constitutional rights, and whether the officers' conduct was objectively reasonable under the circumstances such that qualified immunity shields them.

Grafton's testimony in this regard does not assist Plaintiffs as the Court has previously excluded this testimony for improperly finding facts, weighing credibility, and rendering legal conclusions.[120]   Nevertheless, the Court finds that genuine disputes of material fact exist as to whether Watson and Pattison use excessive force against Fetty

---

[119] *Id.*
[120] *See Ruling*, Rec. Doc. No. 86.
Document Number: 65121                                                              21

while arresting and handcuffing him.  Fetty maintains that he came out of the Texas Club fully compliant, with his arms up, and that he was thrown against his truck, punched in the nose, and repeatedly hit in his upper thigh.  Defendants contend Fetty came out of the Texas Club in a belligerent manner and resisted being handcuffed. Defendants also deny punching him.  It is up to a jury to determine who is telling the truth.  Fetty testified as follows:

> After that, I noticed roughly six flashlights coming my direction and soon as I saw that, I put my hands up, I turned around to face my truck which was behind me, and that's when they threw me against the rear driver's side door, and that's when after that, they threw me against the door. There was one, I assume, state trooper behind me patting me down, there was one to the right of me choking me, and the one to the left of me was striking my thigh over and over repeatedly.[121]

The body cam footage filed into the record does not began until Strong arrives on the scene and Fetty is handcuffed and appears compliant.  There is no video footage of Fetty's actual arrest.   Further, while Defendants argue that Fetty's appearance and demeanor during his recorded interview do not indicate someone who just endured a beating, this, too, is a question of interpretation that is within the province of the jury.

The Court is likewise unpersuaded that Fetty's alleged injuries are *de minimis* such that Watson and Pattison are shielded by qualified immunity.  First, the Supreme Court has rejected the notion that a *de minimis* injury can never trigger a constitutional violation:

> This Court's decision [in *Hudson*] did not ... merely serve to lower the injury threshold for excessive force claims from "significant" to "non-de minimis"—whatever those ill-defined terms might mean. Instead, the Court aimed to shift the "core judicial inquiry" from the extent of the injury to the nature of the force—specifically, whether it was nontrivial and "was applied ... maliciously and sadistically to cause harm."[122]

---

[121] Rec. Doc. No. 74-6, p. 24, lines 10-19.
[122] *Wilkins v. Gaddy*, 559 U.S. 34, 39, 130 S.Ct. 1175, 175 L.Ed.2d 995 (2010) (per curiam) (quoting *Hudson*, 503 U.S. 1, 7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)).
Document Number: 65121                                                        22

In *Alexander v. City of Round Rock*, the Fifth Circuit clarified the standard district courts within the circuit should apply in determining whether an injury is legally significant.[123] It explained that even insignificant injuries can support an excessive force claim if they result from unreasonably excessive force:

> Although a de minimis injury is not cognizable, the extent of injury necessary to satisfy the injury requirement is directly related to the amount of force that is constitutionally permissible under the circumstances. Any force found to be objectively unreasonable necessarily exceeds the *de minimis* threshold, and, conversely, objectively reasonable force will result in *de minimis* injuries only. Consequently, only one inquiry is required to determine whether an officer used excessive force in violation of the Fourth Amendment. In short, as long as a plaintiff has suffered some injury, even relatively insignificant injuries and purely psychological injuries will prove cognizable when resulting from an officer's unreasonably excessive force.[124]

Additionally, in November 2017, it was clearly established that punching, kneeing, and assaulting an arrestee who is neither fleeing nor resisting arrest is excessive.[125]  Fetty testified that, at no time, did he resist arrest.  Such conduct, if proven, would constitute an unreasonable use of force. Thus, if Fetty's version of the facts surrounding his arrest is true, even minor injuries such as those allegedly sustained would not be *de minimis* injuries.[126] Whether Fetty was resisting arrest is a genuinely disputed material fact in this matter that must be resolved before the Court can reach the question of objective

---

[123] 854 F.3d 298, 310 (5th Cir. 2017).

[124] *Id.* at 309 (quotation marks, citations, and modifications omitted).

[125] *See Cooper v. Brown*, 844 F.3d 517, 524 (5th Cir. 2016)(citing *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008)).

[126] *See, e.g., Sam v. Richard,* 887 F.3d 710, 714 (5th Cir. 2018) (finding minor bleeding sustained after surrender to police was not a *de minimis* injury); *Bone v. Dunnaway*, 657 Fed. Appx. 258, 262 (5th Cir. 2016)("Although Bone's allegation of injury could be characterized as de minimis—bruising and a swollen cheek—whether an injury is cognizable depends on the reasonableness of the force, not just the extent of the injury"); *Schmidt v. Gray*, 399 Fed.Appx. 925, 928 (5th Cir. 2010) (pain, soreness, and bruising resulting from an officer's slamming a car's trunk lid on a suspect's finger was a legally cognizable injury); *Williams v. Bramer*, 180 F.3d 699, 704 (5th Cir. 1999) ("dizziness, loss of breath, and coughing" caused by choking was sufficient injury to assert constitutional violation).

reasonableness.

In *Patterson v. Allen*,[127] the district court for the Southern District of Texas addressed a case wherein the plaintiff accused multiple officers of excessive force. The court noted that the case

> presents a classic "he said/she said" factual dispute that requires a credibility determination. According to the police officers' testimony, no punch occurred. If a jury were to find the officers credible, then there is no basis for liability as the excessive force claim is predicated on Officer Allen punching Patterson while he was in handcuffs. But if the jury were to accept Patterson's testimony, then the punch would support a verdict in his favor.[128]

The court also denied the argument that the officers were shielded by qualified immunity, finding that "a determination of the objective reasonableness of Officer Allen's conduct 'requires this Court to settl[e] on a coherent view of what happened in the first place.'[129] It is the jury's job to determine who is telling the truth about what happened …."[130]

Further, that Plaintiffs cannot necessarily distinguish between Watson and Pattison is not fatal. In *Morris v. Pierce*, the Western District of Louisiana noted that "[c]ourts have denied summary judgment for officers or upheld jury verdicts against officers in similar settings where there was evidence of the use of excessive force by one or more of a group of officers, even though the plaintiff could not identify the specific

---

[127] 2013 WL 4875092 (S.D. Tex. Sep. 11, 2013).
[128] *Id.* at *3 (citing *e.g., Bush v. Strain*, 513 F.3d 492, 499, 502 (5th Cir.2008) (reversing summary judgment in case in which officer slammed handcuffed arrestee's head into the window of a car because Fourth Amendment's reasonableness test "is clear enough that [the officer] should have known that he could not forcefully slam [arrestee's] face into a vehicle while she was restrained and subdued"); *Howard v. Del Castillo*, 2001 WL 1090797, at *4–5 (E.D.La. Sept.17, 2001) (denying motion to dismiss based on allegation that police officers beat an arrestee after he had been handcuffed).
[129] *Id.* at *4 (quoting *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir.1994) (internal citation and quotation omitted)).
[130] *Id.*

officer(s) who actually employed the force."[131]

Accordingly, Defendants are not entitled to summary judgment on the Section 1983 individual capacity excessive force claims asserted against Pattison and Watson.

### 5. Eighth Amendment Claims

Plaintiffs also allege that Fetty's Eighth Amendment right "to be free and not subjected to excessive bail, nor excessive fines, nor cruel and unusual punishments," was violated by Defendants.  Defendants herein move for summary judgment on this claim, arguing that such rights apply to a convicted inmate, which Plaintiff was not.

Plaintiffs fail to address this argument in opposition to Defendant's motion; therefore, summary judgment is granted in favor of Defendants on this claim as it is abandoned.[132]  Further, this Court has followed Fifth Circuit precedent in similar cases and finds that summary judgment is also appropriate on the merits as Fetty was not a convicted inmate protected by the Eighth Amendment as asserted herein.[133]

### F.  State Law Claims

The Court finds that neither Party has appropriately briefed state law claims under a Rule 56 standard.  The burden is on Defendants to support their motion.  Defendants

---

[131] 2008 WL 4287967, *5 (W.D. La. Sep. 17, 2008)(*see, e.g.*, *Miller v. Smith*, 220 F.3d 491 (7th Cir.2000); *Senk v. Village of Northfield*, 961 F.2d 1578, 1992 WL 92742 (6th Cir.1992).

[132] *See U.S. ex rel. Woods v. SouthernCare, Inc.*, 2013 WL 1339375 at *7 (S.D. Miss. Mar. 30, 2013)("The Relators did not adequately brief their opposition to the Defendant's Motion to Dismiss Count Three on state law claims of fraud, suppression, and deceit. As such, they have abandoned Count Three."; *see also, Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n. 1 (5th Cir. 2006) (concluding that plaintiff's failure to defend her "retaliatory abandonment" claim in response to the defendant's motion to dismiss constituted abandonment of the claim); *Dean v. One Life Am., Inc.,* No. 4:11–CV–203–CWR–LRA, 2013 WL 870352, at *2 (S.D. Miss. Mar. 7, 2013) (holding that by failing to address the defendant's argument in her response, the plaintiff abandoned her claim); *Alexander v. Brookhaven Sch. Dist.*, No. 3:07–CV–640–DPJ–JCS, 2009 WL 224902, at *4 (S.D. Miss. Jan. 28, 2009) (stating that the plaintiff "appears to have abandoned [her Equal Pay Act] claim having not defended it" in her response to the defendant's motion to dismiss), *aff'd*, 428 F. App'x 303 (5th Cir. 2011) ).

[133] *Lowell v. Ard*, No. CV 17-00187-BAJ-RLB, 2019 WL 4855150, at *3 (M.D. La. Oct. 1, 2019)(citing *Hare v. City of Corinth, Miss.*, 74 F.3d 633,639 (5th Cir. 1996)).

argue that Plaintiffs have "not developed [their] state law claims"[134] and state in perfunctory fashion that the state law claims are so similar to the federal claims (and judged by the same standards) that dismissing the federal claims should result in the dismissal of all state law claims.  Following suit, Plaintiffs respond simply that "Louisiana does recognize a negligence action against a police officer."[135]  Plaintiffs then state that this Court should exercise supplemental jurisdiction over these claims.  Plaintiffs vaguely assert in their *Second Amended Complaint* that "[t]he plaintiffs were damaged by the actions of defendant(s) in violation of Louisiana Civil Code Article(s) 2315, 2316, and/or 2320."[136]

The Court agrees with Defendants that it is unclear what state law torts – beyond general negligence and a reference to the article regarding vicarious liability - have been asserted in this matter.  Indeed, no specific Louisiana tort claims are pled, and no Louisiana tort elements are stated with supporting factual allegations.  However, Defendants did not carry their summary judgment burden on the state law claims, as briefed.

Accordingly, the Court will grant leave[137] to Defendants to file a Rule 12(c) motion and/or supplement Rule 56 motion regarding state law claims, limited to 15 pages, on or before March 5, 2021, to which Plaintiffs have leave to respond, limited to 15 pages, on or before March 19, 2021.  Any motion should be consistent with the Court's findings in this Ruling.  Federal claims addressed herein are not to be re-argued.  No new evidence may be filed or submitted in this matter.  No extensions of time shall be granted.

---

[134] Rec. Doc. No. 51-1, p. 9.
[135] Rec. Doc. No. 56, p. 17 (citations omitted).
[136] Rec. Doc. No. 33, ¶ 21 (C).
[137] Defendants are, of course, not required to file any motion.

Pleadings that fail to comply with the Local Rules and Orders of this Court shall be stricken without leave to cure.

## III.    CONCLUSION

For the reasons set forth above, the *Motion for Summary Judgment*[138] by Defendants is GRANTED in part and DENIED in part as set forth herein.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>February 19, 2021</u>.


**CHIEF JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[138] Rec. Doc. No. 51.
Document Number: 65121